Good morning. May it please the Court, Counsel, I'm Tom Corrales with the State of Health Defender. I represent Keith Little in this appeal. Mr. Little was convicted of first-degree murder following a jury trial from October 2013, and he was sentenced to a maximum term of 75 years imprisonment, which reflects a maximum base term of 60 years under the statute for murder, plus 15 years as an add-on, which applied in this case because someone for whose conduct the jury found the defendant responsible discharged the firearm in committing the murder. It's not in dispute here that the defendant was not the one who shot the victim in this case, so a 75-year term is the maximum alleged under the facts proven at trial. Now, we've raised three issues in this appeal. The first and second are interrelated arguments. Both pertain to whether the defendant's video-recorded statement to two detectives, not the non-video, oh, actually the video-recorded statement as well, should be admitted at trial. And those are the arguments that I'm going to address this morning. There's a third argument in which we contend that the 75-year sentence was an abuse of the trial judge's discretion. I don't intend to cover that, but I'd be happy to address any questions you have regarding that argument. Now, as your honors know from reviewing the briefs, the interviews of the defendant in this case came about when a cold murder case that didn't have any good suspects grew warm when the two leading detectives in the investigation learned that the defendant had been caught possessing the hot handgun. And without question, the detectives here, Watkins and McDaniel, were part of the murder investigation team. That's the case that they hoped to solve when they were advised in July 2010 that bullets which were taken from the autopsy of the store owner who was killed in this case matched the gun that was recovered when the defendant was arrested about six weeks before those forensic results were obtained. And to complete the timeline, the shooting which occurred at the Peoria Food Mart store happened on March 30th of 2010, which would be roughly five weeks before the date of the incident that resulted in my client's arrest and the discovery of this weapon. Now, the actions of Detectives Watkins and McDaniel in trying to learn what the defendant knew once they learned that the gun that he possessed was not an unlawfully possessed gun but a murder weapon, those interviews are the subject of our attack in Issues 1 and 2. The overlapping feature of the interrogations that were conducted is that when these detectives sat down to interview my client, who was a jailed inmate not having yet resolved his weapons charge, they chose not to video record the interview from the start and they chose not to give the defendant Miranda warnings during the early unrecorded interviews. And the state asked you to find, in an attempt to back these two detectives up, that the statute that requires the recording of an interview of an in-custody person concerning a murder case wasn't violated because the defendant really wasn't in custody as a suspect in the murder. Since he was not in custody technically, Miranda should also not have been considered violated according to the state. And so that's where I want to start with the custody question. And if I have time, I'll address the state's secondary or fallback arguments. There's one that pertains to each of the two arguments, suggesting that the video requirement statute could still be complied with and also one that even if the Miranda rights weren't read when the defendant was in custody, that this was not a question-first-and-then-warned type of interrogation. The fallback arguments are only really germane after we've considered the custody question. So we know that the defendant wasn't brought to the station to be interviewed from off the street in this case. He was in the custody of the jail from the time that he was arrested on either May 3rd or May 4th, straight through to the date that the detectives had him transported from the jail to the station to be put in an interview room. So he was in custody generally speaking. But being a jail inmate for a different offense doesn't automatically make a person subjected to custodial interrogation about anything. You have to apply recent case law from the U.S. Supreme Court in Howells v. Fields, and hopefully the case that I cited in my reply will also be useful, and that's McKendrick v. State, a case from Florida, 2013. And they help guide the inquiry into how to address when a questioned jail inmate should be considered in custody when he's questioned. Because that person is neither in custody for any purpose, nor is he never to be considered in custody for either the Miranda purposes or for the purposes of the video recording statute. It's a case-by-case test that is set forth in the Fields decision. And an important factor, I think the leading factor that's discussed in Fields and also that Florida case, McKendrick, is whether the person being questioned is told that he can terminate the questioning and go back to the cell that they took him from. Without that information, what is the person being questioned supposed to think? I can't be free to go. I'm not a free person in the first place. And in this case, the record shows the detectives did not communicate to my client that he was not going to have to just sit there and interview and be questioned because they wanted him there. And it's of no significance that the detectives in this case testify that they didn't consider Mr. Little to be a suspect in the murder. For one thing, that's totally self-serving. But more critically, it doesn't have anything to do with the test for whether someone would consider themselves to be... You seem to be blurring the lines between two issues. The first issue is, was he a murder suspect with regard to the first issue of the brief, because that requires videotaping. The second issue, the Miranda warnings, is was he in custody. And as I listen to your arguments, it seems like you're blurring the two. Well, I think they are interrelated. I think the custody question is the same regarding whether you need to be given Miranda or you need to have him be a suspect or not. The statute does not say a suspect. The video recording statute just refers to custodial interrogation in a murder case. So it doesn't have anything to do with what the police think about the person that they're questioning. In the Slater case and in this court's Travis case, the court expressed that the beliefs of the police officers don't come into play with regard to the murder of the defendant. So they don't have to answer the custody question unless it's communicated to the defendant. And in that case it would only be if it's communicated that they do think he is a suspect. Then it would cut towards finding that he's being custodially interrogated. But when they don't say anything to him, how could it matter? The viewpoint of the person being interviewed is the key point of view here. And so the defendant here is being questioned about a murder and he was answering questions during a non-recorded custodial interrogation. That's all there is to that first argument. The statute requires that the entire custodial interrogation in a murder case be video recorded. And if they're not, both the unrecorded session and the recorded session later is presumptively inadmissible except for impeachment purposes. Judge Curry is the judge who ruled on the latter motion in Lemonade, the motion to suppress just the last one. Yes, the most recent. Did he make a finding as to whether the officers had your client transported for the interview because he was a witness, a potential witness, or whether he was a witness? He did not address that. No findings? No. The closest finding you'll read in the record from Judge Curry is he made some comments about why would you show pictures of the murder victim unless you were trying to get something out of the person. If they're just a witness, that's not going to generate them to open up. And I think kind of an implied comment, which was to Tom Ivins, which was to the defense attorney, was isn't this a normal practice that the police, according to the defendant, claimed that they were going to make him go down for this if he didn't tell them what he knew. And that was part of an unrecorded interview. But Judge Curry seemed to agree that those were indications that would, I think, inferentially lead to the belief that they didn't really think he was just a witness. You've looked at the records. Is there any discussion on the recorded videotapes about reports linking your client's fingerprints to the gun? No. Because Detective McDaniel asks your client at 751, I think it's the shortened videotape. The redacted one. At 751 on that tape, he says, Marcus got a gun, which later you somehow got. These are in the first moments of the interview. So at that point, you're talking about your client somehow got the gun. And then your client responds at 836. He starts explaining, first McDaniel had the wrong name. He was saying it was Marcus Robinson, I think. And your client corrects him and says, no, it was Alexander. And then your client says, at 836, Marcus Robinson. That's how I caught it. That's why my fingerprints were on it. But there's no discovery that says his fingerprints were on it. That was just an explanation of how he was in the jail for the weapons possession offense. Do you think it's a fair inference that in the non-recorded portion, the detectives told him, you know, your fingerprints are on the gun. Tell us how that happened. I mean, that's somewhere between conjecture and inference. There's a problem with the fact that the first portion and the defendant claims there were two, because there was an hour missing in the logs of when the defendant arrived at the station. So his claim was that Watkin interviewed him alone for four to five o'clock. And then he called for McDaniel. There's a problem with the fact that those aren't videotaped. That goes toward the later part of the case. And then there's another claim that the state is putting in as a fallback here, that these are voluntary statements. There's no way to know how voluntary Mr. Little's statements during that recorded portion are without really having a good look at what happened in the early. Didn't the officers explain that they thought he was a witness that could help them explain how Marcus got the gun? They didn't know about Marcus until the defendant told these detectives in the unrecorded portion of the interview that that was his cousin. I mean, obviously McDaniel gets his name wrong. He just heard about this Marcus person. This is how they found out about Marcus. Marcus was in the car. Did they know it was him? I don't believe they were. He wasn't arrested? No. Everybody got away except Keith Little. Your client was found at the scene and the gun was found not in anybody's possession on the ground? Right. But they charged my client with having a gun. Because they didn't catch the other people? Presumably. I mean, it was just a charge and it hadn't been resolved all the way through. It was set for a jury trial on Monday. Right. And they called your client in on Friday. That's correct. That's correct. So why not wait until the jury trial is over on the aggravated unlawful use of weapons to talk to him? I can't speak to, again, the mindset of the detectives here. How much can we, you said congesture, surmise, I mean, how much can we read into the chronological events here? They get the ballistic report. They can't even wait three or four days until the unlawful use of weapons trial is over. They get the ballistic report and they yank your client in. Sometimes actions speak louder than words. And what is our role? Well, to determine in the first priority this whole custody, custodial interrogation point, which doesn't, in my argument, require any looking into the minds of the officers. So that's the first prong. Now the second prong under the recording statute, Section 103-2.1F, is can the state, by a preponderance of the evidence, overcome the presumption of even the recorded interview being inadmissible? And there I think it becomes important that you don't have very much to go on, because it's the state's burden under Section F to show that this is a voluntary statement. And the voluntariness of the statement encompasses everything that happened. His being brought from the jail, not given Miranda, questioned at least once by the two detectives at Michigan, and twice before the video was started by my client's testimony. And my client, in a piece of testimony that Judge Corey seems to give credit, claims that he was convicted of murder. He claims that when Watkins interviewed him alone, he said, you don't give us information, you will go down for this. And just to kind of put a little bow on it, he adds, and I've gotten people convicted of murder with less than this. And kind of scared the defendant into thinking, like he referred to other cases where someone found with a gun that turned out to be a murder weapon is in prison. Thank you. So those are things that go to the second part of the analysis for issue one, whether this was shown to be a voluntary and reliable statement, despite the fact that the video wasn't turned on at the time it should have been turned on. Now, just briefly, to cover the second argument the state makes with regard to the question first, warn later tactic, that requires a showing of deliberateness. We agree with the people versus Lopez following Missouri versus Siebert. The concurring opinion of Justice Kennedy from Siebert turns on the deliberateness of the officers. That, again, goes into making some inferences, but we can make inferences under Lopez based on the totality of the circumstances. And here, you're never going to get officers again, as the one in Siebert testified, and say, yeah, this is our training. This is what we did on purpose. We hope to get something. Then we kind of put the stamp of Miranda on it, and we start over, and we hope to use that second part. But the inferences here can lead to the conclusion that that's what was being done here. And that's our second issue. If you do not reverse and strike, vacate the, suppress the statement made on the video because of the statute not being complied with, we would also ask you to reverse and remand this case without the statement being able to be used because of the Miranda violation based on Missouri versus Siebert and people versus Lopez. No other questions? Thank you. Mr. Clark, counsel. The issue in this case comes down to a question of the video recording requirements of 725 ICS 5-103.2.1. And then our subsection D simply provides that if the court finds by preponderance of the evidence that the defendant was subjected to a custodial interrogation in violation of this section, any statements made by the defendant during and following the non-recorded custodial interrogation, even if otherwise complying with the section, are presumed to be inadmissible. The key question here, the key issue here, is custodial interrogation. Because the defendant's argument here is premised upon the fact that, well, because Judge Curry made the finding of suppressing the first statement that was made during the non-recorded because of a Miranda violation, which is a Miranda violation, obviously Judge Curry had to find that it was a custodial interrogation, determined that that statement should be suppressed, but not the recorded statement, finding it voluntary and reliable. So... He basically conflated them, I think, his ruling, in essence. But in terms of what he ruled, I think, in essence, that's what he ended up concluding. So what are we reviewing? Is it de novo, and we look at it anew, or do we look at his findings? I think you have to go along... I think the standard motion to suppress a finding with respect to findings of fact are accepted, unless contrary by the record, and you can draw your own conclusions from those findings of facts. Your review of the ultimate ruling is determined by the trial judge's de novo. As far as the people's argument is concerned, the custodial interrogation can answer, or does answer, I think, Issue 1, and can answer Issue 2, because Issue 2, obviously, Issue 2 being the Missouri v. Siebert is the question first without Miranda, and if there is a custodial interrogation, the people's argument hinges upon, in large part, upon whether or not this is a custodial interrogation. You're appealing... I've got trouble with your appealing the partial suppression of the judges, or your attempting to raise in your brief an appeal of the partial suppression. Quite the question. Being able to question the trial judge's finding? Well, unless the state can certify that the suppression substantially impaired their case, then under 604A, they can't appeal. On the Supreme Court interpretation of that, we can't appeal. But then you're locked into the Taylor Doctrine, aren't you? The Taylor Doctrine, you don't appeal that. Well, no, I think the Taylor Doctrine, I think in this case, so what you're saying is we have an issue here that the state can't appeal. Right. I don't think that's necessary. I respect your view, Your Honor. I think that because this is the first opportunity, and because we can't attempt to, we can try to obtain the trial judge's ruling, sustain the trial judge's ruling on any basis, I think we can take and argue that. I think we can argue that there was no custodial interrogation that was required to be recorded under the statute. See, I... First of all, I don't understand where you're saying that you can't, in good conscience under Young, say that the suppression, you couldn't have taken an appeal under 604 because you couldn't say it's substantially impaired. But you're arguing that it's substantially impaired right now in front of us. No, I'm not arguing it's substantially impaired. What I'm arguing is, what I'm simply arguing is... You're impairing the prosecution. No. What I'm saying is the trial judge's, the basis for the defendant's argument relies upon Judge Currie's original ruling. So if that ruling is wrong, then he has no argument with respect to the statute. Because there's been no requirement to record because it wasn't custodial. So we have to attack the custodial after the interrogation. If not, then basically our hands are tied in arguing that the recording wasn't even required. And that would basically give the defendant kind of a free rein here to take and get to a certain point. And we would be very limited in what we could take and argue. I strongly disagree with your honor on that. I think we have a right to be able to contest the custodial... The very essence of the statute is custodial interrogation. If we can't take and question that, then... So you have argued, okay, it was custodial, but they were just looking into the unlawful use of... No, what I'm saying is custodial. The thing that kicks here is the fact that the defendant was in custody. But as counsel pointed out, and as the case law points out, simply because of the fact that you are in custody on another charge, if you're brought in, does not necessarily mean that you are in custody for that questioning. And even though they might be investigating a murder, they basically were only questioning the defendant because of the link to the gun. And they had no clue who was involved, had no clue who was involved in the botched armed robbery and murder. And so as a result, their investigation was going to take and work with what they had currently, and work backwards. Because there is always the possibility, and it is a fact because I have done cases where this has been the case, a murder weapon actually isn't with the person who committed the murder, it's somewhere down the chain. And so they're doing logically what they think they need to take and do. And I understand that, but when I look at the videotape, they weren't questioning this defendant about Marcus's fingerprints on the gun. Or the ballistics. His client was explaining how Marcus threw the gun to him, and that's how his fingerprints got on it. So that tells me, based a little on my experience, he was a suspect in the murder, not Marcus. Because they didn't know about Marcus. So this is what I'm struggling with. How much can I read into? And what are the trial judge's findings of fact with regard to what he was in custody for that ended up suppressing the first conversation based on Miranda? You would have to take and believe that Judge Curry, in making the finding that Miranda's were required, that he was in custody even about questioning about the gun. And I think that is wrong. So if he was in custody over the gun and improperly questioned, the first part is suppressed. Can't come in. And the gun charge ended up being dismissed. They had no evidence. It was gone. So then my question is, did they sacrifice that charge by violating constitutional rights with regard to Miranda on that charge? Well, the thing is, if we take a look, if we look at the facts, 33 days elapsed from the murder to the time that the defendant was ultimately arrested and the gun was found. It wasn't until July that the link between the gun and the earlier murder or botched armed robbery was made. And the link was ballistic. The link was ballistic. So that's what they were going to. During the questioning, and during questioning and cross-examination, the defendant basically said, I'm going to testify. And this is at volume 19, R10-11. The defendant testified that he was told by the detective Watkins that the defendant was not really down there for any reason, that he was just being viewed as a witness. Questioning was limited to the gun. There was no questioning about a murder. Yeah, but possession, okay, he had possession of the gun. That was the issue to be tried. He wasn't found with it. It was on the ground. True. But the thing is, he was still charged with that. But the thing is, ballistics was not required to prove that crime. The aggravated unlawful use of weapons. So when the ballistics came in, all of a sudden we had a new piece of evidence. Whether or not, and whether or not they knew his fingerprints were on the gun from the aggravated unlawful use of weapons or whatever, okay. The fact of the matter remains, if he did drop the gun, even though he had the gun, did that mean that he was at the armed robbery? Did that mean that he was there when the person was shot? Or was this gun obtained later in the road? Let's back up a minute. Judge Curry found this was a Miranda problem, that first statement. Right? Correct. They've got a guy that they bring up to question with regard to a gun that he's being charged with. And he is charged with and is going to go to trial, correct? Okay. And so under Miranda, your first question is, was this custody? And is there a custody interrogation? Are there questions asked that were designed to gather incriminating evidence against the guy about the gun? How is that not a Miranda violation? I don't think they were trying to get incriminating statements. First of all, they weren't trying to get incriminating statements from him about possessing the gun. They were trying to find out where he got the gun from. They're asking about the gun. He's charged with that. How can you say that doesn't fit the Miranda? I just don't understand that. How does that not fit Miranda? Because he got in custody being questioned at this time. If the questioning is about the gun because of the murder investigation, was he in custody on the murder investigation? Was he asked about the gun? He's charged with a crime about a gun. He's asking questions about the gun. So he asked those simple Miranda questions. Was he in custody? Was it asking questions that would lead to incriminating statements about the gun? The officers wanted it both ways because there were multiple motions to suppress and one was based on a violation of a right to counsel. And the response of the state at that time that you're stuck with is we weren't talking to him about the UUW case. We didn't have to call his attorney. We thought he was a witness with regard to the murder case. So I think what makes your job difficult is the state has argued different positions based on different issues because there's two cases. But if he's arguing, if the police said that we weren't questioning him about that, about the UUW so we didn't have to call Mr. Turner. We were just questioning him about, we were investigating where the gun was before it arrived on the scene. And he survived. Does that put him in a custodial situation? Was he in custody? Was it a custodial interrogation with respect to the murder? That's what you keep on going to. But he's asking questions about the gun. Pertinent to the unlawful use of weapons. And in that situation, that would be suppressible. To not be able to use against them at the aggravated unlawful use of weapons. If he makes a statement about the gun, that's just about the gun. Can that be used as trial? Okay, when you say trial, are we talking about murder trial? No, we're talking about the gun. Without the Miranda warnings, I would say no. But the thing is, this wasn't a motion to suppress in the aggravated unlawful use of weapons case. It was. There were joint motions. And Judge Curry heard them both at the same time. But the thing is, it carried over into the murder. And that's the point. It's the point that basically, he's not in custody for questioning about the gun. To find out where the gun came from. And in fact, Judge Curry even said he questioned whether or not what he said was even an admission. Let's see if I can find what Judge Curry specifically said. He questioned Judge Curry questioned whether the defendant's admission that he was present at the time of the murder was necessarily an incriminating statement. I mean, now we have this whole idea that basically, what he said wasn't even incriminating. So what do we suppress? His statement wasn't incriminating. And what happened is, the police stopped at that point and turned on the video equipment. Again, we're talking about compliance with the statute, the video recording statute. Was it required for that first one? It's not the basis of counsel's argument. I'm only arguing Your argument, again, I've got a problem with it based on Taylor. Your argument, that first part, it's like a counter-appeal, right? A cross-appeal. I don't want to take and say that because basically the cross-appeal, you've got to take and file a notice of cross-appeal. And I don't think that we had to take and file a cross-appeal in order to address the defendant's argument. But you want us to find that the suppression was improper? Well, what we have to take and find is basically, find that there was no custodial interrogation during the first interview that should have been taped as required by the statute. If it wasn't custodial, it wasn't required to be taped. And if it's not required to be taped, the subsequent statement is not suppressible. And that's what they're trying to get suppressed here. We're not trying to get. I have not asked for a cross-relief. I have not asked if he can have the statement come in. All I'm saying is, it wasn't custodial. And I'm not asking for it to come in. I'm just basically saying that what was already done was proper. And in terms of whether you should have a cross-appeal or not, I just want to say in your defense, you're not trying to get the first part of the interview in. You're saying, we proved our case without it, but the judge was wrong. In essence, that's it. It's the general rule that we can argue anything on the record. I just see it a little bit different. I understand. I see it a little bit different, too. Thank you. Thank you, Your Honor. Thank you. Isn't this really a muddy record? It has a lot of tentacles. And we're only looking at the last two, which were consolidated for a ruling, and Judge Curry only ruled on the murder. He didn't enter an order on the aggravating and unlawful use of weapons. Right. And you were correct to point out that actually the only case number on that motion in Lemonade was the weapons case number. And that's why we had to supplement the record with it, because in the body of it, it went to both cases. So clearly that was an attempt to suppress... It's just a mess in the trial court. And this is why judges have to make good records. It's also a mess because the officers in this case were playing games. And this case is very similar in terms of the recording statute to the Harris case, which is in the briefs, where the court could pick up on the fact that what this was was an attempt to say, we don't think they're a witness. We don't think they're a suspect. We only think they're a witness. So we're not turning on the video equipment. But then they managed to get the incriminating response without the video on. The question is, why aren't they turning the video on if they're not playing games? I mean, what are they trying to hide by conducting these... They know the investigation that they really want to solve here is the murder case. And I agree. I think... They make that argument any time they don't turn the videotape on. They don't have to turn the videotape on unless there's particular circumstances. Then they have to turn the videotape on. Right. But this is a person who is a jail inmate who is in custody and not told that they don't have to answer the questions regarding this Food Mart shooting. So it's clear that they're keeping this guy in their custody. They're doing this questioning before he resolves his case on Monday so that they don't have to go try and find him and bring him in. So he is in custody and being questioned about a murder. The statute applies for that. Now, I agree. Judge Corey kind of ignored part of the motion because he didn't talk about the statute and whether or not the custodial part of the statute kicked in. He only really considered the custodial aspect of Miranda. I think they're the same. And so opposing counsel is telling you that's why he has to come up with this argument which infiltrates both of my issues about whether that custodial finding was correct. I don't think, to be fair, I don't think Gary's trying to undo the Judge Corey's ruling about the first... He's trying to do. He is trying to overcome the findings of fact. Well, the standard review kind of covers that. Are these fair findings of fact or are they totally unreasonable that no one should... I mean, we get that thrown at us all the time when we're trying to make an argument that the findings of fact below were manifestly erroneous. They weren't manifestly erroneous. These are findings of fact that this was a custodial interrogation. Statements such as isn't it common to tell every suspect that you're going to go down for this if you don't tell us what happened? Or the other statement about why are you showing pictures of the crime scene and the murder victim if you're not considering? Again, those are directed at, and I think Judge what do you consider him to be a suspect for? That is not a part of this. He's in custody and he's being questioned about a murder. These state of mind of the officers don't come into play. Well, Arthur, the custody is used in three different ways here. You're using it in a loose way that he's in prison and he's in jail. You're using it that way. He's in the jail so he has to be brought up. There's custody or custodial aspects of Miranda whether you're in custody or not for Miranda purposes. And then there's the statutory custody situation. I began my argument with saying I understand that you're not in custody for any purpose. But the question under Miranda is this question is reasonably designed to elicit an incriminating response. Well, it's clear. Those questions that were on the video were reasonably designed so the ones off the video were looking for an incriminating response. Thank you. But I urge you to look at the McKendry case out of Florida as well, side by side with Fields v. Howes about when an inmate is brought in, whether or not that constitutes custody for purposes of Miranda. I think that applies the same to both of my arguments. And there's a test involved and the key point that found no custody in Fields v. Howes was they told him twice, you can go back to your cell. You're not required to be here. And in the McKendry case out of Florida, they pointed out that important factor, which was highlighted in Howes, was not present in the McKendry case. They didn't tell him that. So he felt compelled to be there to answer their questions. Let me give you a hypothetical and just see if you have illuminated my thinking here today. If your client was brought in and interviewed in violation of his Miranda rights and not charged with murder so that he was not the accused, those statements would have been admissible against Marcus. Marcus. Even though they weren't recorded. Yes. Because the statute talks about the statement of an accused and it's inadmissible as evidence against the accused. So the officers may have had a great goal to get statements that would bring them to Marcus. And Marcus would not have been able to make a vicarious challenge to a violation of the statute. So as to this defendant, I appreciate Mr. Genetovic's difficulties because this was not an easy case for him based on the record. And the record was created by the two detectives who were conducting this interrogation. There's a good way this all could have benefited the state if it had been done just a little bit differently or at least it wouldn't have been so problematic for the state if it had been done differently. But just because the judge granted this impression for the one it doesn't necessarily apply to all your conclusions for your issues one and two. Correct. It only covers the aspect that the debate over whether or not it's a cross appeal or just challenging findings of fact. I take it as challenging findings of fact. That covers the custody question. Then there's another inquiry with regard to both issues. And the briefs kind of lay all that out in terms of the deliberateness for the Siebert issue and in terms of the voluntariness for purposes of subsection F of the recording statute. Those are secondary concerns. You're making inferences and arguments based on that first part but it doesn't necessarily lead there it depends on if you accept those inferences. I agree. I agree. In terms of the bad faith, the power of the officers, yeah. With the Siebert argument I think that's definitely true. Thank you. You did a nice job. We'll take this case under advisement and give a ruling with dispatch and we'll take a recess for the next panel.